The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this honorable court may give their attendance and they shall be heard. God save the United States of America and this honorable court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is Unibank for Savings et al. v. SBK Holdings USA, Inc. Appeal No. 19-1990 and Appeal No. 21-1184. Attorney Garagos, please introduce yourself for the record and proceed with your argument. Thank you. Good morning, Your Honor. My name is Mark Garagos, G-E-R-A-G-O-S, appearing for the intervener appellants. I appreciate the time and all of the good work that your clerks have done in setting this up. I think that the argument, basically the central part of the argument, both in the paperwork and what I would reiterate today, is that there was sufficient basis and a dispute of material facts that should have allowed this case to proceed. Summary judgment in this case basically entered within 30 days of the answer, was premature, obviously, granted, and then when the district court was given an additional opportunity to reopen the discovery after the unveiling or unsealing of the criminal indictment of Mr. Sarkeesian, I think it was imperative at that point that a discovery should have been done, and that was, to my mind, compounded the situation here. The factual recitation of what transpired here shows that there is clearly a basis upon which this should have been, at the very least, further discovery allowed, and I think was woefully premature. The idea that a bank who had never done a, by all accounts, a loan on an aircraft before, then entered into an in excess of $4 to $5 million financing agreement on a jet, whose tail number had just been changed, who had an FAA lien in its public file, who also were coming on the heels of the previous lender wanting to get rid of the loan because it appeared to be a product of fraud, and then the changing or the formation of the Entity 999 jet, which actually was not legally effective until after the loan proceeds took place, all in all looked like a, I guess, I don't know that I would call it clever, but obviously Mr. Sarkeesian, who was then a practicing lawyer for the Entity, has since been convicted and disbarred, showed that he used his legal acumen to perpetrate this fraud upon SBK. If you then combine that with the fact that when the indictment was unsealed, that I did a review of it, it looks like on the criminal indictment, there was a laundry list of no less than seven other banks that he had engaged in similar fraudulent transactions. That in and of itself, I think, would have compelled a genuine issue of material facts. You then compound that with his testimony at the bankruptcy proceeding and the other things that he engaged in here, and to my mind at least, this is a case that would appear to be on its face, an issue of material facts. I think clearly, and we said it in the papers and I won't take a lot of time, but it would appear to me that there was some kind of complicity on the part of Unibank based on the transaction itself. One of the things that we brought continuously in our paperwork to the attention of the district court was there were no log books for this jet. That is significant in that nobody will buy a jet without log books, let alone loan money, this kind of money, on a jet without log books. Mr. Garagos, on your first argument regarding that there should have been more discovery or that the Rule 56 decision was premature, as I understand Rule 56, it has a provision for you to file a particular type of motion if you believe that there should be more discovery done before a Rule 56 motion is adjudicated. As I understand the briefing, you did not file one of those motions. That's correct. I don't dispute that the determination was made that based on the record that we already had that there were genuine issues of material fact. The discovery, we then, after the unsealing of the criminal indictment, as this court well knows, was remanded back to allow the court to reopen on that issue, and the district court did not. Dennis, I understand that in terms of liens, if you loan money to a debtor on a plane to perfect a lien, you need to make a formal filing with the FAA. But if you do that and you are a good faith purchaser without actual knowledge, you then take precedence over someone who was defrauded out of the asset. Is that a correct understanding of the law? The way I understand it is Unibank was taking the position that they had no notice. The title search and the lien was there, and that was one of the issues of material fact. Mr. McDyer had filed the lien. Counsel, as I understood it, he didn't actually get a lien. He simply filed a notice of an intent to seek a lien. Am I incorrect on that? Correct. I think you are correct on that. He filed what was the preliminary document that they asked for, what the FAA asked for. Mr. McDyer, as I think we put in the paperwork, is a former presidential pilot and a very long-time skilled familiar with the FAA. This was the preliminary step, which then I believe what the FAA calls it, is they put it in the suspense public portion of the file so that it will show up on a title search. I would liken it, I suppose, to a list pendants in a real estate case where it's a notice that there is the pending title. Then you have moved away from Judge Kayada's question, which had to do with had there been a perfected lien, then your client might have had priority. You apparently are unable to take a position on that. But factually, there was no perfected lien here. I believe your argument is that this preliminary step was sufficient to put the bank on notice that there might be other claimants. Is that what the argument is? That when you combine this, which they would have seen in the title search, I would agree with your characterization of it, when you then had the SBK phone calls to Unibank, when you then had all of the other, the lack of logbooks, the changing of the tail number, all of those things would have put them on notice in a combination of the fact that they knew that this was the proceeds. That they were not, I guess, going back to the previous question, they weren't a good faith purchaser at that point or a bona fide purchaser at that point. You say that when the bank filed, checked with the FAA, they would have seen the filing, the request made on behalf of your client. What's the support of that? I'm not sure I read the FAA records to indicate that. I believe that there was Mr. McDyer's declaration as to his familiarity with the records at the FAA, and that was in the appendix pages 48 through 51, and that he understood that that was in what he calls the suspense portion. I believe that Mr., and I don't want to mispronounce his name, but Unibank had a declaration from a Mr. Real, R-E-A-L, and in that declaration, wasn't the record check done on May 2nd by Unibank? No, I believe they checked the record prior to that. Was there any record that they checked it after March 21? I don't want to misspeak, but I believe that the... There is the FAA title search, which is dated May 2. Correct, and I believe that that was the formal title search that was done, correct. And so where in the record is there any indication that on May 2, that a title search would have disclosed an interest by your client? In fact, by then there was already a disclaimer file, the fraudulent one, but there was a disclaimer letter file as well, wasn't there? There was a disclaimer letter file, but Mr. Real conceded... Five minutes remaining. Thank you. Mr. Real conceded that they had received calls from Mr. McDyer at the Unibank, and that he was familiar with that. But when the FAA got that disclaimer letter, didn't they remove the earlier filing? No, I don't believe that they did. I think that that just gets added to the file. I don't believe that it removes it. And that would have been part of what we would have shown through further... would have been a genuine issue of material fact. So your argument is that on May 2, when Unibank did the record search, that did their title search, they would have seen something that was sufficient to put them on notice. That's your first argument. Your second argument is even if that's not the case, they would have had actual notice otherwise. Correct. And you combine that with the changing of the tail number, the changing or the... Let me go back to the first point. Normally, when you're dealing with the federal government, there are rules about what is made public and what is not. But you have not cited us to any FAA rule which says that, A, that this filing of a notice of an intent to seek a lien is itself made public, or B, that after a disclosure letter is filed, nonetheless, all of that is available to someone doing a record search of the FAA. That is normally the sort of thing governed by regulation, but you've cited us to nothing. Well, the title report, for lack of a better term, is a public document. That was what was generated and which shows it. But it does not show what you're asserting. It should have been evident. Your argument is, as to that first point, that they should have been put on notice by the search of the FAA records, when, in fact, the filing shows, as I understand it, that they were not, in fact, put on such notice. Well, the declaration by Mr. McDyer expressly... I'm sorry, but so what? There's a regulation or there isn't a regulation. There is the notice. The fact that somebody may have a belief about something doesn't strike me as competent evidence in this context. But the pushback that I would give would be that that would fall under a material issue of fact. That would not be as a matter of law. Well, you've cited nothing to us about that. Let's move to your second point. Your second point is there was oral notice given by someone on behalf of your client to the bank. When was that notice and what did it consist of? Because, as I understood it, it was, oh, we're about to start litigation or we have started litigation. But there is, in fact, no judgment yet that gives our client any interest recognizable at law. So can we talk about that, please? Sure. First of all, there were two restraining orders that were issued out of the L.A. Superior Court by Judge Landis. That is not a judgment. That's merely a temporary restraining order. Correct. And that would be similar, I suppose, to a writ of attachment. It would be similar also to a prejudgment writ of forfeiture in a government action. And that does not establish a property interest. Well, it certainly compels that the property not get moved. That's time. Thank you. All right. Before you leave us, do either of my colleagues have any further questions? Yes. And then Judge Kayada. I want to go back to Judge Kayada's initial question in Borlawen Rule 56D. It seems to me that your client made a tactical decision to move on forward to summary judgment. Your client did not prevail, but shouldn't he be bound by that decision? Because he could easily—the client could have easily filed a motion and, you know, the judge had discretion then to continue and not rule on the summary judgment. And the second part of that question is, aren't you trying then to sidestep or go around that rule by trying to argue it in Rule 68? Well, we then filed a subsequent motion here, which was remanded to the district court after the unsealing of the indictment, and that was denied to allow us to reopen discovery. So I think that to characterize it as a tactical decision in the face of the second motion to reopen discovery wouldn't take that into account. I think clearly that the district court, when they came out initially at the oral argument, talking about this as a—I think he characterized it as a torturous bar exam question, shows exactly what the issues were here. This is something that should have been fleshed out and I don't believe was subject to a motion for summary judgment prior to the unsealing of the indictment and clearly after we had gone back and asked to reopen discovery after the unsealing of the indictment. But the fact is that prior to the ruling on the summary judgment, your client never requested to the court, don't move with the summary judgment. We want to do some discovery or do something else. Hold on, that did not happen, correct? That did not happen, correct. But we did, like I say, we did do it after the unsealing of the indictment and that was denied. You did do what? We went back and asked to do further discovery and after the unsealing of Mr. Sartesian's indictment— And the district court denied that and Judge Helpe's point is at no point did you say to the district court, do not proceed on summary judgment and furthermore, you did not file the proper affidavit under Rule 56. We did file and ask to do discovery and that was denied. Okay, we've already been there. Judge Kayada. Yes, on your actual notice, as I read your brief, you point to two phone calls. You have a declaration referring to a call in April or May, but you don't say when. Right, I believe Mr. Rial in his declaration, I hope I'm not mispronouncing it, from Unibank also conceded that. But that doesn't help you because it doesn't tell us when in relation to the transaction. Before the transaction closed and funded. But the closing isn't the date, isn't it the commitment? No, not necessarily. You have a commitment, but until it funds, you don't waive any of those things if you're the bank prior to the funding. The loan commitment is just that it's always subject to a number of conditions. So you're saying they could have backed out of this any time before June? Correct. Any time before the funding actually is dispersed, the bank reserves all rights in any transaction, any loan transaction, especially in a case like this where they are on notice of the fraud. Well, I'm going to follow up then. I thought the notice question actually had to do with before they make the commitment. Normally, they would search for the title before they make the commitment. Are you saying you have a separate notice putting aside? Let's assume they did not actually have notice prior to the commitment. Are you saying then, regardless, they had notice after the commitment and that should have led them to take the step of not following through on the commitment to the actual closing? Correct. If you characterize commitment, then I would characterize disbursement, meaning when it funds and it closes, so to speak. Yes, they always reserve that. Okay. Thank you. You're making two notice arguments then. Thank you. That is helpful. Judge Kayada? I'm confused because I'm looking at the reference to the addendum, page 24, in your brief, page 8. It suggests that the loan was extended on May 4. I believe that's correct. I'm not opening up to it. Yes. The phone calls that were made, both that Mr. McDyer said and Mr. Real said, were prior to the disbursement of the monies. Is May 4 the relevant date? Is that the date that the loan was made? That's the disbursement, based on what we were saying earlier, as opposed to what was characterized as a commitment. Okay, so it was May 4. It was not June. Correct. Then I go back to the question I originally asked you. The two phone calls, I see one that says the first phone call was in April or May. Well, that doesn't help us if the loan was made on May 4. Then the second one, you point to a call made on May 12. How does that help you if the loan was made on May 4? Well, the disbursement, April would help, because April is clearly before the date of disbursement. But you don't have anything, your declaration that you filed says April or May. The declaration by Mr. Real admits prior to closing, and that's Unibank, that he had received phone calls. Yeah, but that doesn't link up to the substance of a phone call. That's someone looking for logbooks. The logbooks are also a red flag as to notice, to not have the logbooks combined with changing of the... I understand that's a different point. We'll ask your opposing counsel about that. Okay. Okay, thank you. Thank you. At this time, Attorney Garagos, please mute your audio and your video. And, Attorney Loughnane, please unmute your audio and video and introduce yourself to begin oral argument. Good morning. May it please the court. John Loughnane, Nutter, McLennan, and Fish, on behalf of the appellee Unibank for Savings. If I may just address the point that was being discussed. The affidavit of Mr. Real from Unibank is contained at A-94. It clearly says at paragraph 10 that the first time that Unibank received notice of any sort was post-closing. Quote, it wasn't until after the closing that Unibank received a phone call into its call center. If I may back up, this appeal presents a fundamental legal question. Can secured party rights be eviscerated by a party holding merely a silent alleged interest in a secured party's collateral? The district court properly held that the answer is no. And the district court wasn't the only court to reach that conclusion on these facts between these parties. Courts in California, both state and federal, also upheld the primacy of the bank's perfected secured party rights over the appellant's assertion of a silent alleged interest in the collateral. Specifically, the California Superior Court denied appellant's request for an injunction seeking to prevent the bank from foreclosing on its collateral. That was denied by the California Superior Court. Likewise, the United States Bankruptcy Court for the Central District of California also overruled the appellant's objection to the bank's request for relief from the automatic stay. Also overruled the appellant's request for a Chapter 11 trustee and other relief sought by the appellant in that bankruptcy case seeking to thwart the bank's rights. The appellant did not appeal any of those rulings. It further withdrew its adversary proceeding seeking to challenge the validity, priority, and extent of the bank's lien. The district court properly granted summary judgment to the bank as the material facts here are undisputed and unchanged since the time of the rulings in California. Counsel, it's quite interesting that other courts, as you say, have reached conclusions similar to the one you want us to reach. But are you arguing some form of res judicata or collateral estoppel? Your Honor, my specific point here is that the appellant is seeking to sow confusion on facts that really lend themselves to a very clear-cut legal conclusion. I would have thought the cleaner route for you was not to get into the intricacies of res judicata or collateral estoppel on such a thing as a preliminary injunction or the denial of a motion to lift a stay. Can we return, please, to your factual argument? Yes. Thank you, Your Honor. The appellant here at the district court relied on only two declarations that had been previously submitted to the bankruptcy court and no other additional information. So the only factual evidence that the appellant presented to the district court were the two 2018 declarations submitted to the bankruptcy court. Those declarations did not justify relief before the bankruptcy court and they don't justify relief here. As between the bank's perfected security interest and the appellant's silent alleged interest, the bank's perfected security interest prevails. In fact, the FAA told the appellant as much back in January of 2017. Docket number 33 of the bankruptcy court proceedings contained a letter dated January 17th from the FAA to the appellant stating that the FAA does not enter into controversies over the ownership or liens on aircraft, nor do we determine the validity of any conveyance. Conveyances will be accepted at face value. You're confusing me a little. I thought this was a simple case. I thought your client loaned money to 999 Private Jet on May 4th after obtaining a clean title search on May 2nd and it properly filed with the FAA the documents necessary to perfect the security interest. And there's no evidence of actual notice. Were there for a good-paying purchaser end of case? I thought that was your argument. That exactly is our argument, Your Honor. Why are we talking about other stuff? I was rebutting points made by the appellant, but Your Honor had summarized the point correctly. All right. As to Judge Kayada's summation of the evidence, you say that the only proffer on the other side was these two 2018 declarations and they don't lay a hand on the outlines of your case. Just provided by Judge Kayada. Correct. All right. So all of this discussion about other people, including the FAA, reaching similar results is simply beside the point. Correct, Your Honor. The reasons to discount the arguments made by the appellant. What this case really comes down to is how secured lending works in the United States of America. It's a notice-based system, whether it's Article 9 or whether it's aircraft or whether it's any other type of collateral. It's all about notice. And what's on the title, what's on the registry matters. What the title search done here by the bank on May 2nd shows is that there were no liens. What the appellant is arguing is that the bank had some sort of duty, undefined, to go search additional records, do additional inquiry. So, counsel, if I can help, the two arguments that he makes is, well, you couldn't rely on your title search because there were two warning signals. One was there weren't flight logs, and the other was the repainting of the numbers on the tail. And I'm doubtful of that as a legal proposition, that either of that would be sufficient to defeat a perfected lien. But can you just talk a little about those two items? Yes, Your Honor. The first of those issues has its basis in a declaration, 2018 declaration, filed as part of the Bankruptcy Court and also filed here with a summary judgment motion. Judge Hillman considered that statement, which alleged that there had been a call made by SBK to, I'm sorry, a call made by Unibank to SBK. This is a statement submitted by the CFO of SBK, a person who, as the testimony, as the transcript of the summary judgment hearing showed, is involved in his own criminal proceedings, as reflected on the summary judgment transcript. Mr. Loughnane, once again, we're just getting off point. What about the repainting of the tails, the numbers on the tails? Is there any date assigned to that? There's no indication in the record that I'm aware of, Your Honor, that the Bank was aware of any repainting of numbers. All right. Okay. Do you have anything further to say? Your Honor, I would just like to close by saying that everyday lenders rely on recording systems to extend loans secured by real and personal property. According to appellant, it was not enough for the lender to search for liens in the relevant registry here. A reversal here really would send shockwaves through the commercial lending industry, and we would respectfully ask that the Bank's summary judgment be upheld on appeal. Thank you. Thank you much. Judge Halpy has a question. One final question. What is your argument exactly that SBK did not exercise reasonable diligence on moving under Rule 60b-2 after the criminal documents, the indictment, etc., had been unsealed? Why isn't that reasonable diligence? Your Honor is asking about the Rule 60b motion that was filed after the summary judgment decision came out? Exactly that. Your Honor, I think the district court judge had a thorough analysis of the two grounds upon which the motion was brought and correctly determined that neither ground existed here. First, there was nothing in the information that was presented that is of any relevance at all. We, the Bank, filed that information in opposing the motion, and the district court properly determined that it was a fishing expedition. There was nothing to be gained from further investigation on that issue. There were no exceptional circumstances here, basically. SBK chose not to ask for more time under Rule 56b, as I think Your Honor previously indicated. It challenged summary judgment head-on. The district court correctly found that the unsealed documents from the criminal case had no relevance, and the argument that Unibank somehow conspired with SBK is rank speculation that doesn't justify extraordinary relief. There's no evidence of misconduct, much less litigation-related misconduct, that would have warranted entry or granting of that motion. Okay. Thank you. Okay. Thank you, counsel. Thank you. That concludes argument in this case. Attorney Garagos and Attorney Loughnane should disconnect from the hearing at this time.